UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES ROBERT ELLIOTT,<br><br>Defendant. | Case No. 21-cr-735 (RCL) |

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
FOR A REDUCTION IN SENTENCE OR FOR COMPASSIONATE RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant James Robert Elliott's motion for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on U.S.S.G. Amendment 821 (ECF 49 or "the motion"). Elliott is not eligible for the first-time offender reduction because his offense involved violence: he whacked an officer with a wooden flagpole. Nor do the 3553(a) factors counsel reducing his sentence. The Court should deny the motion.

## BACKGROUND

### A. The Instant Offense

The facts of this case are described in detail in the stipulated Statement of Offense (ECF 27), the PSR (ECF 32), and the government's memorandum in aid of sentencing (ECF 40). In brief, the defendant, a member of the Northern Illinois Proud Boys, was a violent participant in the attack on the U.S. Capitol on January 6, 2021. On that day, he dressed all in black, donned body armor and silver-spiked gloves, and, when he arrived at the Capitol, put on a ballistic helmet and body armor. He carried an American flag attached to a wooden pole. Elliott breached the restricted perimeter on the Capitol's west front and advanced to the West Plaza, where police were fighting to hold their line against rioters trying to advance on the Capitol. Elliott repeatedly foisted

1

his flagpole in the air, yelling a war cry: "Patriots, what is your occupation!," drawn from the movie *300*, which dramatizes the battle between the Spartans and the Persians at Thermopylae in 480 B.C. He followed with a guttural cry: "AAH-OOH, AAH-OOH, AAH-OOH," thrusting his flagpole with each grunt for emphasis.

After encouraging others to attack the police, Elliott joined the battle himself. When police tried to pull back bicycle rack fencing from rioters, Elliott swung his flagpole at a police officer's head, hitting him. He then thrust his flagpole at the officer's face. Elliott later bragged to a friend that he had "bonked two cops" that day.

### B. Procedural History

On December 15, 2021, a grand jury returned a six-count indictment, including one count of violating 18 U.S.C. §§ 111(a)(1) and (b) for assaulting an officer with his flagpole. Elliott was arrested five days later and released on conditions. On November 2, 2022, pursuant to a plea agreement, Elliott pled guilty to a felony violation of 18 U.S.C. § 111(a)(1) for the flagpole attack. In the plea agreement, Elliott agreed to a four-point specific offense characteristic for an assault involving the use of a dangerous weapon. ECF 26 (plea agreement) at 2.

The Court held a sentencing hearing on June 22, 2023. Consistent with the plea agreement, the Court calculated the defendant's guidelines range as follows:

Offense Level

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | **14** |
| U.S.S.G. § 2A2.2(b)(2)(B) | Dangerous Weapon | **+4** |
| U.S.S.G. § 3A1.2(a)-(b) | Official Victim | **+6** |
| | **Adjusted Offense Level:** | **24** |
| U.S.S.G. § 3E1.1(a)-(b) | Acceptance of Responsibility | **-3** |
| | **Total Offense Level:** | **21** |

Elliott had no prior convictions, and therefore did not receive any criminal history points. An offense level of 21 and a criminal history category of I resulted in a guidelines range of 37-46 months' imprisonment. This Court sentenced Elliott to 37 months of incarceration, the low end of the range.

According to Elliott's motion, he entered Bureau of Prisons custody on July 26, 2023. On February 8, 2024, he filed the instant motion.[1]

## ARGUMENT

Elliott seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that the revisions to the United States Sentencing Guidelines by Amendment 821 would result in a lower sentencing range, had the revised Guidelines been applied. Mot. at 1-2. The defendant does not satisfy the criteria set forth in Amendment 821 because his offense involved violence and the use of a dangerous weapon. U.S.S.G. §§ 4C1.1(a)(3), (7). Nor do the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of any reduction in sentence.

### I.   APPLICABLE LAW

As relevant here, Sentencing Guidelines Amendment 821 added a new Section 4C.1.1 that provides for a 2-level reduction in offense level for defendants with no criminal history points, who also meet certain other criteria, including that they "did not use violence or credible threats of violence in connection with the offense" and "did not possess … a firearm or other dangerous weapon in connection with the offense." U.S.S.G. § 4C1.1(a)(1), (3), (7).

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which provides:

---

[1] It appears that the motion was submitted February 1, 2023, but was docketed February 8.

3

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added). Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead, § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction." U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii);

4

*see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g., United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment."

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

### 2. NO SENTENCING REDUCTION IS WARRANTED

#### A. Elliott is not eligible for a reduction under § 4C1.1.

For two reasons, Elliott is not eligible for the sentencing reduction under the Section 4C1.1 amendment. First, the offense involved violence, rendering Elliott ineligible under U.S.S.G. § 4C1.1(a)(3). After yelling war cries, Elliott swung his wooden flagpole at an officer's head and then thrust it in his face. Construing 4C1.1(a)(3), Judge McFadden defined violence to mean "[t]he use of physical force," typically "accompanied by fury, vehemence, or outrage" and "unlawfully exercised with the intent to harm." *United States v. Bauer,* No. 21-cr-386-2 (TNM), ECF No. 195

at 4-5. He also defined it as "the "exertion of any physical force so as to injure or abuse." *Id*. Elliott's assault easily meets either definition.

Second, as Elliott stipulated, he used a dangerous weapon in connection with the offense. Under U.S.S.G. § 4C1.1(a)(7), in order to qualify for the reduction, the Court must find that "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." By using a dangerous weapon—the wooden flagpole he used like a club or a jousting lance—Elliott necessarily possessed it. He is therefore doubly ineligible for the reduction.

> **B. Even if the Court determines that § 4C1.1 applies, it should not reduce Elliott's sentence.**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

Here, the Section 3553(a) factors counsel against granting a sentence reduction. Elliott arrived at the Capitol, prepared for battle, assaulted a police officer with a heavy flagpole, and sought to instigate others to join the attack. After January 6, he did not immediately express remorse, instead bragging about how, on a day whose tragic effects continue to reverberate, he "bonked two cops lol." As this Court has recognized, assaults on officers were the most serious crimes committed on January 6, and it is vital for the Court to send the message that such attacks

6

on those attempting to protect the public are completely unacceptable responses to political grievances.

And Elliott's sentence already reflects a degree of leniency. The Court sentenced him to the low end of the guidelines, below the government's recommendation. That guidelines range was lower than it could have been because the government accepted Elliott's plea to Section 111(a), foregoing the Section 111(b) enhancement that would have added six levels to the offense – a two-point enhancement for a Section 111(b) conviction under U.S.S.G. § 2A2.2(b)(7) and an additional four points because Elliott wore body armor during the offense (U.S.S.G. § 3B1.5(2)(B)). Had these enhancements applied, Elliott's guidelines range would have been 27, corresponding to 70-87 months' imprisonment. The 37 months actually imposed is barely more than half of the low end of that sentence. All this to say: the Court's sentence is appropriate, if not lenient, given Elliott's conduct on January 6 and his guidelines range.

Elliott's motion argues that he deserves a reduction because of his lack of criminal history, good behavior since charging, family support, and because he has "resolved to have full respect for the law." These facts are all laudable. But most of them were before the Court at sentencing, where Elliott emphasized his family situation, lack of criminal history, and wrote a letter expressing remorse. The Court already factored them in when it decided to impose a low-end sentence. The only new fact appears to be Elliott's good behavior in while custody. That is not so compelling or extraordinary to warrant the Court revisiting the sentence it previously determined was no greater than necessary.

In addition, the 3553(a) factors counsel against a sentence reduction for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to

our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13. The Court's sentence must send a strong message of general deterrence, uphold respect for the rule of law, and reflect the gravity of the riot.

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.[2]

---

[2] If the Court does decide in its discretion to grant the defendant's motion, the government requests that the Court delay release by 10 days in order to allow time for the Bureau of Prisons to process the release, as recommended by the Committee on Criminal Law of the Judicial Conference of the United States in its January 25, 2024 memorandum.

**CONCLUSION**

For the reasons above, and based on the entire record, defendant has not met his burden to show that he is entitled to a sentence reduction. Accordingly, the Court should deny defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

 /s/ Alexis J. Loeb
ALEXIS J. LOEB
Assistant United States Attorney (Detailed)
CA Bar No. 269895
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
Alexis.Loeb@usdoj.gov
(415) 436-7200